UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALYSSA N. R.,[1] | ) | CIVIL ACTION NO. 4:23-CV-0151 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| MARTIN O'MALLEY, *Social Security* | ) | |
| *Commissioner*,[2] | ) | |
| Defendant | ) | |

## MEMORANDUM OPINION

## I.    INTRODUCTION

Plaintiff Alyssa R., an adult who lives in the Middle District of Pennsylvania, seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income under Title XVI of the Social Security Act. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. §1383(c)(3) (incorporating 42 U.S.C. §405(g) by reference).

---

[1] To protect the privacy interests of plaintiffs in social security cases, we have adopted the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States that federal courts should refer to plaintiffs in such cases by their first name and last initial.

[2] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. He is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d) (providing that when a public officer sued in his or her official capacity ceases to hold office while the action is pending, "the officer's successor is automatically substituted as a party."); *see also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

This matter is before me upon consent of the parties pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. After reviewing the parties' briefs, the Commissioner's final decision, and the relevant portions of the certified administrative transcript, the Court finds the Commissioner's final decision is supported by substantial evidence. Accordingly, the Commissioner's final decision will be AFFIRMED.

## II.    BACKGROUND AND PROCEDURAL HISTORY

On January 4, 2021, Plaintiff protectively filed an application for supplemental security income under Title XVI of the Social Security Act. (Admin. Tr. 11).  In this application, Plaintiff alleged she became disabled on October 7, 2020, when she was 26 years old, due to the following conditions: PTSD, bipolar disorder, asthma, panic attacks, anxiety, depression, chronic diarrhea, stomach pain, back pain, headaches, and wrist and leg pain due to accident. (Admin. Tr. 250). Plaintiff alleges that the combination of these conditions affects her ability to lift, bend, stand, remember, understand, follow instructions and get along with others. (Admin. Tr. 274). Plaintiff has a limited education. (Admin. Tr. 23). Plaintiff has no past relevant work. (Admin. Tr. 23).

On June 10, 2021, Plaintiff's application was denied at the initial level of administrative review and upon reconsideration on October 5, 2021. (Admin. Tr.

11). On October 11, 2021, Plaintiff requested an administrative hearing. (Admin. Tr. 154).

On February 15, 2022, Plaintiff, assisted by her counsel, appeared and testified during a hearing before Administrative Law Judge Randy Riley (the "ALJ"). (Admin. Tr. 11). On March 1, 2022, the ALJ issued a decision denying Plaintiff's application for benefits. (Admin. Tr. 11-24). On March 5, 2022, Plaintiff requested that the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council") review the ALJ's decision. (Admin. Tr. 225). Along with her request, Plaintiff submitted new evidence that was not available to the ALJ when the ALJ's decision was issued. (Admin. Tr. 2).

On January 11, 2023, the Appeals Council denied Plaintiff's request for review. (Admin. Tr. 1).

On January 30, 2023, Plaintiff filed a civil action in this court. (Doc. 1). As relief, Plaintiff requests the Court "enter an Order reversing the decision of the Appeals Council, as it relates to their denial of the request for review of the decision of the Administrative Law Judge," and award benefits. (Doc. 1, p. 7). As this Court has pointed out to Plaintiff's counsel at least three times before, "[n]o statutory authority (the source of the district court's review) authorizes the court to review the Appeals Council decision to deny review."[3] The Court construes Plaintiff's

---

[3] *Matthews v. Apfel*, 239 F.3d 589, 594 (3d Cir. 2001).

complaint to request the Court reverse the administrative decision of the ALJ, remand Plaintiff's case for a new hearing, or award benefits.

On March 27, 2023, the Commissioner filed an answer. (Doc. 7). In the answer, the Commissioner maintains that the decision denying Plaintiff's application was made in accordance with the law and is supported by substantial evidence. (Doc. 7). Along with her answer, the Commissioner filed a certified transcript of the administrative record. (Doc. 8).

Plaintiff's Brief, (Doc. 12), the Commissioner's Brief, (Doc. 15), have been filed. Plaintiff did not file a reply brief and the time to do so has passed. This matter is now ready to decide.

## III.    LEGAL STANDARDS

Before looking at the merits of this case, it is helpful to restate the legal principles governing Social Security Appeals, including the standard for substantial evidence review, and the guidelines for the ALJ's application of the five-step sequential evaluation process.

### A.    SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

A district court's review of ALJ decisions in social security cases is limited to the question of whether the findings of the final decision-maker are supported by

substantial evidence in the record.[4] Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[5] Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla.[6] A single piece of evidence is not substantial if the ALJ ignores countervailing evidence or fails to resolve a conflict in the record.[7] In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence."[8] When determining if the Commissioner's decision is supported by substantial evidence under sentence four of 42 U.S.C. § 405(g), the court may consider any evidence that was in the record that was made before the ALJ.[9]

---

[4] *See* 42 U.S.C. § 1383(c)(3); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).

[5] *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

[6] *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

[7] *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).

[8] *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

[9] *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001) ("when the Appeals Council has denied review the district court may affirm, modify, or reverse the Commissioner's decision, with or without a remand based on the record that was made before the ALJ (Sentence Four review)."). The claimant and Commissioner are obligated to support each contention in their arguments with specific reference to the record relied upon. L.R. 83.40.4; *United States v. Claxton*, 766 F.3d 280, 307 (3d Cir. 2014) ("parties . . . bear the responsibility to comb the record and point the Court to the facts that support their arguments."); *Ciongoli v. Comm'r of Soc. Sec.*,

The Supreme Court has underscored the limited scope of district court review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. *T-Mobile South, LLC* v. *Roswell*, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." *Ibid.*; see, *e.g.*, *Perales*, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison*, 305 U.S. at 229, 59 S.Ct. 206. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).[10]

To determine whether the final decision is supported by substantial evidence, the court must decide not only whether "more than a scintilla" of evidence supports the ALJ's findings, but also whether those findings were made based on a correct application of the law.[11] In doing so, however, the court is enjoined to refrain from

---

No. 15-7449, 2016 WL 6821082 (D.N.J. Nov. 16, 2016) (noting that it is not the Court's role to comb the record hunting for evidence that the ALJ overlooked).

[10] *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019).

[11] *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*,

trying to re-weigh evidence and "must not substitute [its] own judgment for that of the fact finder."[12]

Furthermore, meaningful review cannot occur unless the final decision is adequately explained. As the Court of Appeals has noted on this score:

> In *Burnett*, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable judicial review. *Id.* at 120; *see Jones v. Barnhart*, 364 F.3d 501, 505 & n. 3 (3d Cir. 2004). The ALJ, of course, need not employ particular "magic" words: "*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." *Jones*, 364 F.3d at 505.[13]

## B. STANDARDS GOVERNING THE ALJ'S APPLICATION OF THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[14] To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible

---

900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

[12] *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014).

[13] *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009).

[14] 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 416.905(a).

to do his or her previous work or any other substantial gainful activity that exists in the national economy.[15] Unlike disability insurance benefits under Title II of the Social Security Act, "[i]nsured status is irrelevant in determining a claimant's eligibility for supplemental security income benefits" under Title XVI of the Social Security Act.[16]

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process.[17] Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").[18]

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."[19] In making this assessment, the ALJ considers

---

[15] 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.905(a).

[16] *Snyder v. Colvin*, No. 3:16-CV-01689, 2017 WL 1078330, at *1 (M.D. Pa. Mar. 22, 2017).

[17] 20 C.F.R. § 416.920(a).

[18] 20 C.F.R. § 416.920(a)(4).

[19] *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. § 416.920(e); 20 C.F.R. § 416.945(a)(1).

all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.[20]

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her from engaging in any of his or her past relevant work.[21]  Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC.[22]

## IV.    DISCUSSION

Plaintiff's brief "is unfocused and touches on many issues."[23]  Additionally, Plaintiff

> raises certain arguments only in passing, and without citations to the record or caselaw. [*See* Doc. 12]. We will neither develop legal arguments on a party's behalf based on passing mention of error, nor will we dig through the voluminous record to develop such arguments. *See Loewen v. Berryhill*, 707 Fed. Appx. 907, 908 (9th Cir. 2017) (memorandum opinion) (citing *Carmickle v. Commissioner*, *Social Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (the court does not need to address arguments that were made without specificity); *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (the

---

[20] 20 C.F.R. § 416.945(a)(2).

[21] 42 U.S.C. § 1382c(a)(3)(H)(i) (incorporating 42 U.S.C. § 423(d)(5) by reference); 20 C.F.R. § 416.912; *Mason*, 994 F.2d at 1064.

[22] 20 C.F.R. § 416.912(b)(3); *Mason*, 994 F.2d at 1064.

[23] *Nazario Vargas v. O'Malley*, No. 1:23-CV-00959, 2024 WL 4351447, at *4 (M.D. Pa. Sept. 30, 2024).

court cannot construct arguments for an appellant, and it will only examine issues specifically and distinctly argued in an appellant's initial brief)); *see also U.S. v. Dunkel*, 927 F.2d 944 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs."); *see also U.S. v. Winkelman*, 548 F. Supp. 2d 142, 150 (M.D. Pa. Mar. 10, 2008) ("We are not pigs searching for truffles and are unwilling to search through the massive record that has been developed in this case to find evidence of these alleged violations.").[24]

We will accordingly treat those arguments with the brevity Plaintiff does. We also note for Plaintiff's benefit that this Court's Local Rules *require* that a plaintiff's arguments "be supported by specific reference to the portion of the record relied upon and by citations to statutes, regulations and cases supporting plaintiff's position."[25]

Plaintiff alleges two errors in her brief:

(1)    Whether the Administrative Law Judge erred and abused his discretion by failing to consider the limitations in Plaintiff's residual functional capacity from those impairments that the Administrative Law Judge considered to be severe, including obesity, cervical degenerative disc disease, asthma, headaches, recurrent urinary tract infection (chronic cystitis), hernia, fibromyalgia, depression, bipolar disorder, dysthymic disorder, anxiety, intermittent explosive disorder (IED) and post-traumatic [stress] disorder (PTSD)?

(2)    Whether the Administrative Law Judge erred and abused his discretion in failing to afford proper weight to opinions and limitations from Plaintiff's treating source, Dr. Jonathan Kinley, as compared to the opinions from the State Agency Consultants?

---

[24] *Nazario Vargas*, 2024 WL 4351447, at *4.

[25] Local Rule 83.40.4(c) (available at https://www.pamd.uscourts.gov/sites/pamd/files/LR120114.pdf) (last accessed Nov. 4, 2024).

(Doc. 12, pp. 1-2).

###### A.    THE ALJ'S DECISION DENYING PLAINTIFF'S APPLICATION

In his March 2022 decision, the ALJ evaluated Plaintiff's application at steps one through five of the sequential evaluation process.

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity at any point between October 7, 2020 (Plaintiff's alleged onset date) and March 1, 2022 (the date the ALJ decision was issued) ("the relevant period"). (Admin. Tr. 11-24).

At step two, the ALJ found that, during the relevant period, Plaintiff had the following medically determinable severe impairments: obesity, cervical degenerative disc disease, asthma, headaches, recurrent urinary tract infection, hernia, fibromyalgia, depression, bipolar disorder, dysthymic disorder, anxiety, intermittent explosive disorder (IED) and post-traumatic stress disorder (PTSD). (Admin. Tr. 13).

At step three, the ALJ found that, during the relevant period, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Admin. Tr. 14-16).

Between steps three and four, the ALJ assessed Plaintiff's RFC. The ALJ found that, during the relevant period, Plaintiff retained the RFC to engage in medium work as defined in 20 C.F.R. § 416.967(c) except:

> the claimant must avoid exposure to extreme cold, extreme heat, wetness, humidity, and irritants. Work is limited to simple routine repetitive tasks and to occasional interaction with public, coworkers, and supervisors.

(Admin. Tr. 16).

At step four, the ALJ found that, during the relevant period, Plaintiff had no past relevant work. (Admin. Tr. 23).

At step five, the ALJ found that, considering Plaintiff's age, education and work experience, Plaintiff could engage in other work that existed in the national economy. (Admin. Tr. 23-24). To support his conclusion, the ALJ relied on testimony given by a vocational expert during Plaintiff's administrative hearing and cited the following three (3) representative occupations: linen clerk, DOT # 222.387-030; store laborer, DOT # 922.687-058; and box bender, DOT # 641.687-010. (Admin. Tr. 24).

## B.  WHETHER THE ALJ ERRED IN HIS CONSIDERATION OF THE OPINION EVIDENCE

Plaintiff argues, "[t]he ALJ erred and abused his discretion in failing to afford proper weight to opinions and limitations from Claimant's treating source, Dr.

Jonathan Kinley, as compared to the opinions from the State Agency Consultants."

(Doc. 12, p. 22).

Before evaluating this argument, the Court must clarify the requirements of

the current regulations regarding opinion evidence.

> On March 27, 2017, the regulations regarding opinion evidence shifted. *See Mercado v. Kijakazi*, 629 F. Supp. 3d 260, 279 (M.D. Pa. 2022). Under the old regulations, "ALJs were required to follow regulations which defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy." *Id.* at 280. But under the new regulations, "[t]he range of opinions that ALJs were enjoined to consider were broadened substantially, and the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis." *Id.* Further, under the old regulations, the ALJ assigns the weight he or she gives to a medical opinion. 20 C.F.R. §§ 404.1527(c), 416.967(c). Under the new regulations, however, the ALJ evaluates the persuasiveness of medical opinions and prior administrative medical findings using certain factors. 20 C.F.R. §§ 404.1520c(a), 416.920c(a).

> [Plaintiff] appears to conflate the new regulations with the old. She describes the ALJ as "assign[ing] persuasive *weight* to the opinions of" [the State Agency Consultants] [ ] [ ]. [Doc. 11, p. 30) (emphasis added). We note the above paradigm shift in regulations so it is abundantly clear what standard ALJs are held to presently, and what standard we will apply hereafter.[26]

The Court also notes Plaintiff does not properly cite the correct regulations she

attempts to rely on. (Doc. 12, pp. 22-28). Plaintiff cites to "20 C.F.R. § 404.1520(a),"

and "20 C.F.R. § 1520(c)." *Id*. The Court presumes Plaintiff intended to cite to 20

---

[26] *Nazario Vargas*, 2024 WL 4351447, at *5 (emphasis in original).

C.F.R. § 416.920c(a) and 20 C.F.R. § 416.920c(c) as this case involves a claim under Title XVI.

Plaintiff's treating physician, Dr. Jonathan Kinley, submitted a physical RFC assessment dated November 30, 2021. (Admin Tr. 1201-1206). Plaintiff argues that the ALJ "did not afford proper weight to the limitations, opinions and statements from Claimant's treating source," and "did not properly analyze these treating source opinions using the factors under 20 C.F.R. §1520(c), and offer little, to no analysis of his opinions, other than stating his opinions and then affording them no weight." (Doc. 12, pp. 25, 27) (all errors in original).

Under the applicable regulations, the ALJ uses five factors in evaluating the persuasiveness of a medical opinion, from a treating source or otherwise: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors.[27] The applicable regulations explain that "[t]he most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)."[28] "Supportability" means "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical

---

[27] 20 C.F.R. § 416.920c(c)(1)-(5).
[28] 20 C.F.R. § 416.920c(a).

opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."[29] Consistency means "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."[30]

The applicable regulations require an ALJ to "explain how [they] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [a claimant's] determination or decision."[31] The ALJ "may, but [is] not required to, explain how [they] considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when [they] articulate how [they] consider medical opinions and prior administrative medical findings in [a claimant's] case record."[32] When the ALJ finds "that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported (paragraph (c)(1) of this section) and consistent with the record (paragraph (c)(2) of this section) but are not exactly the same, [they] will articulate how [they] considered the other most persuasive factors in paragraphs

---

[29] 20 C.F.R. § 416.920c(c)(1).
[30] 20 C.F.R. § 416.920c(c)(2).
[31] 20 C.F.R. § 416.920c(b)(2).
[32] 20 C.F.R. § 416.920c(b)(2).

(c)(3) through (c)(5) of this section for those medical opinions or prior administrative medical findings in [a claimant's] determination or decision."[33]

Plaintiff's argument that "[t]he ALJ did not properly analyze these [sic] treating source opinions using the factors under 20 C.F.R. § 1520(c), and offer little, to no analysis of his opinions, other than stating his opinions and then affording them no weight,"[34] misrepresents the ALJ's decision. (Doc. 12, p. 25, 27) (all errors in original). About Dr. Kinley's opinion, the ALJ wrote,

> The undersigned is not persuaded by the November 2021 medical opinion of Jonathan Kinley, DO (Exhibit 18F), that finds the claimant would miss four to ten days of work per month. This opinion is not consistent with the objective clinical findings. The medical records show generally normal to mild physical limitations from the various impairments. As noted above, she has had routine and conservative care that has improved and controlled her symptoms. She has not had significant limitations from the umbilical hernia prior to and after recovery from surgery. Further, the opinion does not support absenteeism of four to ten days. While Dr. Kinley based the absenteeism on, *inter alia*, fibromyalgia diagnosed in June 2021, the undersigned notes that the pain management examinations show the claimant is independent with activities of daily living and has normal strength and ranges of motion along with normal gait and station. The undersigned notes that Dr. Kinley did not provide exertional, manipulative, or postural limitations in the opinion.

---

[33] 20 C.F.R. § 416.920c(b)(3).

[34] Plaintiff is technically correct that the ALJ did not assign any weight to the Dr. Kinley's opinion. That is because the ALJ was not required to under the applicable regulations which did away with assigning weight to medical opinions, instead requiring an ALJ to evaluate the persuasiveness of medical opinions. 20 C.F.R. § 416.920c(a).

(Admin. Tr. 22).

Contrary to Plaintiff's assertion, the ALJ explicitly considered the supportability and consistency of Dr. Kinley's opinion. The ALJ noted that the opinion is not consistent with the objective clinical findings in the record. The ALJ also noted that Dr. Kinley's opinion was not well supported because, although he cited to Plaintiff's fibromyalgia, "*inter alia*," meaning among other things, examinations showed Plaintiff to be independent with activities of daily living, have normal strength, ranges of motion, gait and station. (Admin. Tr. 22). While Plaintiff asserts the ALJ "ignores a large portion of the medical record" that is inconsistent with the ALJ's assertion that Plaintiff generally had normal and mild physical limitations," Plaintiff cites to none of that "large portion of the medical record." (Doc. 12, p. 27). It is not the Court's responsibility to go hunting in the record for the portions that support Plaintiff's argument, and we will not do so.[35] To the extent Plaintiff is arguing that the ALJ did not articulate how he considered the factors in 20 C.F.R. § 416.920c(c)(3)-(5), because the ALJ did not find any medical opinions equally persuasive about the same issue but not exactly the same, he was not required to explicitly explain how he considered those additional factors.[36]

---

[35] *Claxton*, 766 F.3d at 307 ("parties . . . bear the responsibility to comb the record and point the Court to the facts that support their arguments."); *Ciongoli*, 2016 WL 6821082 (noting that it is not the Court's role to comb the record hunting for evidence that the ALJ overlooked).

[36] 20 C.F.R. § 416.920c(b)(3).

Plaintiff further asserts that ALJ does not point to inconsistent medical records contradicting Dr. Kinley's opinion, "and again ignores may [sic] records" that are consistent with Dr. Kinley's opined limitations. (Doc. 12, p. 27). Again, Plaintiff cites to none of the "ma[n]y records" she asserts are consistent with Dr. Kinley's opined limitations. And again, it is not the Court's responsibility to go hunting in the record for the portions that support Plaintiff's argument, and we will not do so.[37] In any event, although the ALJ may not have directly cited such medical records in his paragraph analyzing Dr. Kinley's opinion, the ALJ writes, "[a]s noted above," referring to the analysis of the medical records he made earlier in the decision. (Admin. Tr. 22). When determining whether a decision is adequately explained, it is important to remember that the decision itself need not adhere to a particular format, so long as it reflects that there was sufficient development of the record and permits meaningful review when read as a whole.[38] Accordingly, if an ALJ discusses and analyzes evidence in a section of the decision that appears before determining the persuasiveness of the medical opinions, he is not required to repeat the analysis for the sake of elaborating on his articulation of the persuasiveness of a medical opinion so long as the Court is satisfied that the ALJ was sufficiently familiar with the

---

[37] *Claxton*, 766 F.3d at 307; *Ciongoli*, 2016 WL 6821082.

[38] *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (affirming an ALJ's decision where the step three explanation was deficient, but the decision as a whole illustrated that the ALJ considered the appropriate factors).

medical evidence to have evaluated whether it supported the medical opinion.[39]
Here, we are satisfied the ALJ was sufficiently familiar with the medical evidence
to have evaluated whether it supported the medical opinion. Earlier in the decision,
the ALJ comprehensively and objectively reviewed the medical records. (Admin.
Tr. 18-20). Specifically, the ALJ thoroughly discussed Plaintiff's fibromyalgia,
urinary issues, bipolar disorder and anxiety, the diagnoses mentioned in Dr. Kinley's
opinion. (Admin. Tr. 18-20).

Next, Plaintiff argues that the ALJ "assigned persuasive weight to the
opinions of the State Agency Consultants and adopted many of the limitations they
noted in her RFC, despite the fact that the State Agency Consultants **never
examined Claimant and rendered their opinions without many of the medical
records submitted in this matter**." (Doc. 12, pp. 27-28) (emphasis in original).
Plaintiff "appears to rely on bold text to carry much of this argument," and does not
otherwise develop it.[40] In any event, "State agent opinions merit significant
consideration . . . ."[41] "[T]he mere fact that some additional medical evidence is

---

[39] *See Serrano v. Kijakazi*, No. CV 20-3985, 2021 WL 4477137, at *4 (E.D.
Pa. Sept. 30, 2021).

[40] *Dejesus v. O'Malley*, No. 1:23-CV-00977, 2024 WL 4351449, at *7 (M.D.
Pa. Sept. 30, 2024).

[41] *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011).

received after the agency consultant's report does not necessarily mean that the ALJ

may not rely on the agency consultant's opinions."[42] Moreover, Plaintiff asserts that,

> the opinions and limitations from the State Agency Consultants were
> contrary to those from Claimant's treating sources, and the medical
> record when considered as a whole. As limitations opined by
> Claimant's treating source were consistent with the medical record, the
> ALJ should have included the limitations noted above, as they based
> his opinions concerning limitations for Claimant upon his own
> observations.

This, however, is her own opinion and characterization of the record and effectively

asks the Court to review the medical records and reevaluate the persuasiveness of

the medical opinion evidence. (Doc. 12, p. 28). This we may not do. Our analysis is

cabined to whether substantial evidence supports the ALJ's findings.[43] For the

reasons explained above, we find the ALJ did not err in his consideration of the

medical opinion evidence, and his persuasiveness analysis of the medical opinions

is supported by substantial evidence.

C.    WHETHER THE ALJ ERRED AND ABUSED HIS DISCRETION BY
      FAILING TO CONSIDER LIMITATIONS FROM PLAINTIFF'S SEVERE
      IMPAIRMENTS

"The section[s] of [Plaintiff's] brief that argues error in the RFC are

emblematic of the problems that plague the entirety of the brief as discussed

---

[42] *Dejesus*, 2024 WL 4351449, at *7 (citing *Chandler*, 667 F.3d at 361).
[43] 42 U.S.C. § 1383(c)(3) (incorporating 42 U.S.C. § 405(g) by
reference); *Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019).

above."[44] Plaintiff "asserts error in passing and always in a conclusory manner, without citing case law."[45] "[M]uch of [Plaintiff's] argument appears to be found in the word 'clearly' strategically placed before a conclusory assertion without any evidentiary or legal support."[46] That said, Plaintiff does "make meager attempts at developing some arguments in this case–albeit with a dearth of case law . . . ."[47] We will begin with a review of the standards applicable to the RFC assessment generally to make clear the standards an ALJ is held to.

"The ALJ–not treating or examining physicians or State agency consultants–must make the ultimate disability and RFC determinations."[48] "Residual functional capacity is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s)."[49] When making an RFC determination, "the ALJ must consider all evidence before him."[50] Indeed, "[s]urveying the medical evidence to craft an RFC is part of the ALJ's duties."[51] Where "a conflict in the evidence exists, the ALJ may choose whom to credit but

---

[44] *Dejesus*, 2024 WL 4351449, at *7.

[45] *Id.*

[46] *Id.*

[47] *Id.*

[48] *Chandler*, 667 F.3d at 361.

[49] *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)) (internal quotation marks omitted).

[50] *Burnett*, 220 F.3d at 121.

[51] *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006).

cannot reject evidence for no reason or for the wrong reason."[52] A court's "review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence."[53]

An ALJ must "set forth the reasons for his decision" in a clear enough articulation that allows for meaningful judicial review.[54] An ALJ need not "use particular language or adhere to a particular format in conducting his analysis," but must "ensure that there is sufficient development of the record and explanation of findings to permit meaningful review."[55] The ALJ's decision must "be accompanied by a clear and satisfactory explication of the basis on which it rests."[56]

Applying these standards to the ALJ's decision, the Court finds that the ALJ's RFC determination is supported by substantial evidence.

Plaintiff argues that the ALJ did not adequately articulate "why he did not adopt the limitations from Claimant's treating source, despite the length (every 6 to 8 weeks for more than 3 years) and quality of his treatment, as well as the medical records which support his opinions regarding Claimant's limitations." (Doc. 12, p.

---

[52] *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (quoting *Mason*, 994 F.2d at 1066) (internal quotation marks omitted).

[53] *Wilder v. Kijakazi*, No. 1:20-CV-492, 2021 WL 4145056, at *6 (M.D. Pa. Sept. 9, 2021) (citing *Burns v. Barnhart*, 312 F.3d 113, 129 (3d Cir. 2002)).

[54] *Burnett*, 220 F.3d at 119.

[55] *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).

[56] *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).

15). As discussed above, the ALJ did adequately articulate why he did not find the Dr. Kinley's opinion persuasive. In doing so, the ALJ also inherently demonstrated why he rejected the limitations therein, explaining that the opinion, and thus its limitations, was not consistent with the medical evidence of record and was not well supported. (Admin. Tr. 27-28; Doc. 7-2, pp. 28-29). Accordingly, this argument fails.

Plaintiff alleges that "[t]he need for more significant limitations in Claimant's RFC were further confirmed by Claimant's testimony . . . ." (Doc. 12, p. 18). However, the ALJ found that "[t]he medical evidence does not support the claimant's allegations regarding the intensity, persistence, and limiting effects of the impairments." (Admin. Tr. 18). The ALJ then went on to thoroughly review and summarize Plaintiff's medical records to support that finding, identifying and explaining the inconsistencies between Plaintiff's testimony and the medical evidence of record. (Admin. Tr. 18-21). The ALJ further noted that "in addition to the objective medical evidence not supporting the claimant's allegations of debilitating symptoms as noted above," Plaintiff "has provided inconsistent information regarding daily activities in that she has described daily activities that are not limited to the extent one would expect given the complaints of disabling symptoms and limitations." (Admin. Tr. 21). Therefore, arguments based on Plaintiff's testimony, alone, are improper.

Plaintiff asserts that,

> as noted in many of the treatment notes, and as confirmed by the ALJ,
> Claimant's severe mental-health related impairments include bipolar
> disorder, dysthymic disorder, anxiety, intermittent explosive disorder
> and PTSD, and these conditions contribute to issues with Claimant's
> ability to remain on task, her concentration, focus, and memory, as well
> as her ability to interact with co-workers, the public and supervisors,
> that impact her throughout the day and get worse as the day progresses.
> While acknowledging these severe impairments, the ALJ includes no
> limitation concerning Claimant being off task, the need for unscheduled
> breaks, or expected absenteeism to deal with these impairments, despite
> many records that confirm that these impairments caused issues both
> prior to, and after her alleged onset date.

(Doc. 12, p. 17). Despite alleging that "many records" confirm the need for these
limitations, Plaintiff cites to nothing in the record supporting the need for those
limitations. *Id*. We are not obligated to find that evidence for Plaintiff and will not
do so.[57]

Plaintiff also asserts that the ALJ "erred and abused his discretion in failing
to properly consider Claimant's severe mental-health related impairments, and
limitations related thereto." (Doc. 12, pp. 19-20). Plaintiff then provides a list of
symptoms and citations to where those symptoms are noted in the record. (Doc. 12,
p. 20). To the contrary, the ALJ included a lengthy paragraph summarizing and
analyzing Plaintiff's mental-health impairments and treatment records, specifically

---

[57] *Claxton*, 766 F.3d at 307; *Ciongoli*, 2016 WL 6821082.

noting Plaintiff's diagnoses of anxiety disorder, bipolar disorder, major depressive

disorder, dysthymic disorder, intermittent explosive disorder, and PTSD:

> Regarding mental health, the claimant has undergone psychiatric medication management and individual therapy through Pennsylvania Counseling Services for mental health issues variously diagnosed as anxiety disorder, bipolar disorder, major depressive disorder, dysthymic disorder, IED, and PTSD. The medication regimen includes lithium and citalopram with past trials of Sertraline, duloxetine, fluoxetine, lamotrigine, and mirtazapine (Exhibits 3F, 5F, and 26F/91-197). The mental status examination at the January 2021 medication management visit found the claimant with impaired concentration and in mild distress regarding medical problems and testing; however, the psychiatrist noted this was improved over prior visits. She had good insight and judgment. Recent and remote memory was intact, but registration recall of three out of three items after three minutes was fair. Her attention and concentration was intact with successful completion of serial 7s and spelling of "world" backward. She was cooperative with appropriate manner and good eye contact. Thought processes were appropriate, and decision making was intact. She continued with medication management and therapy (Exhibit 3F/5-8). The individual therapy notes indicated that the claimant had increased anxiousness due to Children and Youth Services stipulations for her to retain custody of her daughter, including CYS home visits and keeping medical and therapy appointments. She reported an increase in anxiousness prior to the CYS home visits. While the claimant noted anger outbursts and lashing out at people, including those involved with helping her, she reported less anger issues since the alleged onset date. She also reported less flashbacks with "spacing out" (Exhibit 5F/6-11). In February 2021, the claimant reported an increase in anxiety and panic following a minor motor vehicle accident. The therapist recommended breathing exercises and other coping strategies (Exhibit 5F/6-7). The claimant continued to work on separating herself from tensions at home. She reported improved anxiousness and stress levels when CYS were no longer needed by September 2021. The therapist noted generally mild to moderate symptomology; however, the claimant was oriented to person, place, and time and was able to take an active role in mental health treatment. The claimant reported having continued nightmares from past abuse. She also reported an increase in

anxiousness about CYS possibly becoming involved again (Exhibit 17F/6-37 and 26F/7-35). The psychiatrist continued to adjust medications for reported increase in crying and anxiousness; however, anxiousness levels decreased after CYS involvement ended. The subsequent mental status examinations found the claimant generally within normal limits. (Exhibits 17F/38-48 and 26F/198-214). Further, the primary care provider found the claimant generally with normal mood and affect, normal behavior, and normal thought content (Exhibit 25F/171).

(Admin. Tr. 20). While the ALJ may not have cited to every page Plaintiff cites to, "we do not expect the ALJ to make reference to every relevant treatment note in a case where the claimant, such as [Plaintiff], has voluminous medical records, [but] we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."[58]  The ALJ clearly did so here.

According to Plaintiff,

the record supports the need for Claimant to take unscheduled breaks to deal with cognitive issues and severe anxiety caused by her multiple severe mental-health related impairments and chronic pain disorders, which symptoms and issues she would experience after trying to work for any extended period of time, and which would likely worsen with continued work and work-related stress. It is also reasonable to believe that Claimant would miss work after a couple consecutive days of work, as exerting herself during the week would result in an increase in the limitations from her severe impairments that would get worse for her as the week progresses.

---

[58] *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001).

(Doc. 12, p. 20). Plaintiff does not, however, cite to portions of the record that show these limitations were necessary, and again, we are not obligated to find that evidence for Plaintiff and will not do so.[59]

> Similarly, Plaintiff alleges that,

> the ALJ failed to include proper limitations regarding Claimant (1) being off task more than 34% of the workday, (2) missing more than one day of work per month, and (3) Claimant requiring a sit stand option, with the need to elevate her legs while sitting (due to back and leg pain, as well as swelling in Claimant's feet) (which, per the Vocational Expert, would eliminate all of the jobs that Vocational Expert testified to), all of which would get worse as the day would go on due to Claimant's severe impairments, and all of which the Vocational Expert opined would render the Claimant unemployable. (Admin Tr. 88-90).

(Doc. 12, pp. 21-22). In support, Plaintiff only cites to the transcript of the ALJ hearing where Plaintiff's attorney asked the VE hypothetical questions about how certain limitations would affect Plaintiff's ability to do the jobs the VE found available for her. Plaintiff cites to nothing further in the record indicating these limitations were credibly established and we will not fulfill Plaintiff's obligation to point to evidence in the record for her.[60]

> Plaintiff alleges that,

> the ALJ fails to explain in setting forth Claimant's RFC how Claimant would be capable of sustaining and retaining work despite identifying intermittent explosive disorder as a severe impairment, and how this

---

[59] *Claxton*, 766 F.3d at 307; *Ciongoli*, 2016 WL 6821082.

[60] *Id*.

disorder would impact her if she exhibited an episode of this disorder
while interacting with her supervisors, coworkers or the public, which
the ALJ states Claimant can do on an occasional basis.

(Doc. 12, pp. 17-18). Plaintiff does not point to specific portions of the record
indicating the need for more restrictive limitations due to Plaintiff's intermittent
explosive disorder. Moreover, the ALJ did adequately explain his reasoning for the
limitations he included in the RFC, specifically addressing Plaintiff's anger, writing,
"the claimant's medical records indicate she was assessed with clinical examination
findings of generally normal to mild functioning involving mood and affect. She
exhibited appropriate behavior, normal thought content, and good eye contact during
the examinations," and "[s]he also had improved coping skills with anger and
irritability toward others." (Admin. Tr. 21). The ALJ also noted that "[w]hile the
claimant noted anger outbursts and lashing out at people, including those involved
with helping her, she reported less anger issues since the alleged onset date."
(Admin. Tr. 20). The ALJ explained that, "[t]he longitudinal medical records show
the claimant has improvement with irritability towards others. She used her coping
skills when angry and stressed." (Admin. Tr. 15). Accordingly, Plaintiff's
conclusory argument is unpersuasive.

Plaintiff concludes that, "[t]he ALJ erred and abused his discretion by failing
to set forth sufficient and proper exertional limitations from Claimant's issues with
her cystitis, which causes diarrhea for days at a time, and frequent bathroom use,

none of which are accounted for in the RFC set forth by the ALJ. (Admin Tr. 530, 559, 694, 718, 784, 856, 1013, 1066, 1216, and 1238).” (Doc. 12, p. 21). While Plaintiff cites to portions of the record documenting Plaintiff's cystitis and diarrhea, Plaintiff does not cite to portions of the record that show exertional limitations were necessary and credibly established due to Plaintiff's cystitis and diarrhea. We are not obligated to find that evidence for Plaintiff and will not do so.[61] Further, the ALJ discussed both Plaintiff's cystitis and diarrhea:

> The claimant also alleges disability secondary to chronic diarrhea and stomach pain. The medical records reveal a diagnosis of irritable bowel syndrome (IBS) . . . . In the present case, the medical records indicate that medications generally controlled her condition. While the claimant testified to severe abdominal pain and diarrhea up to six times per day (Testimony), the clinical records do not support such intensity and frequency. The gastroenterologist prescribed medications, daily fiber supplement, and probiotics. The colonoscopy was negative for colitis, and the gastroenterologist felt that the abdominal pain and diarrhea was secondary to antibiotic use. Her symptoms improved with Metamucil, Miralax, and Colace. She noted Bentyl and Xifaxan were not effective. She noted stress aggravated IBS symptoms (Exhibits 8F and 20F).
>
> . . . .
>
> She also had multiple emergency department visits that noted recurrent urinary tract infections (UTI) secondary to urinary calculus that caused lower abdominal pain. She was provided Keflex for the UTI (Exhibits 7F/8 and 18). The primary care provider followed the claimant for UTI (Exhibit 12F/24). Providers also prescribed Macrobid for subsequent UTIs. Urology also followed the claimant for bladder leakage due to weak pelvic floor. In January 2022, she again tested positive for E. coli in the urine and underwent antibiotic treatment (Exhibits 16F/24 and 24F).

---

[61] *Id.*

(Admin. Tr. 14, 19). Accordingly, we are unpersuaded by Plaintiff's conclusory argument.

> Plaintiff argues,
>
> while holding Claimant to work at the medium exertional level, the ALJ failed to properly consider Claimant's documented issues with walking and standing, particularly to the extent that would be required to perform at the medium exertional level, nor did the ALJ adequately explain how Claimant would be capable of the lifting and carrying requirements of work at the medium exertional level, which would require her to lift and carry 50 pounds occasionally (up to 1/3 of the workday) and 25 pounds frequently (up to 2/3 of the workday).

(Doc. 12, p. 21). Plaintiff provides no citations to the "documented issues with walking and standing" she asserts she has and that the ALJ did not properly consider. We will not go looking for her. Further, the ALJ did adequately explain his RFC finding. The ALJ explained that he found Dr. Cardillo and Dr. Raymundo's opinions persuasive. (Admin. Tr. 21). Those opinions found the claimant capable of medium work as included in the ALJ crafted. *Id*. The ALJ adequately explained why he found those opinions persuasive, pointing out their consistency with the medical records after his thorough review of the medical record. (Admin. Tr. 18-23). In doing so, the ALJ inherently explained that the medical evidence of record, as interpreted by Dr. Cardillo and Dr. Raymundo, demonstrated Plaintiff was capable of performing medium work subject to the additional limitations the ALJ included in the RFC. Therefore, we are not persuaded by this argument.

Finally, Plaintiff argues that the ALJ fails to adequately explain "why he did not consider various medical records that support more significant limitations from Claimant's identified severe impairments, as cited below . . . ." (Doc. 12, p. 15). Plaintiff then provides a list of seventeen (17) "issues related" to her severe impairments and then lists 84 pages in the transcript in support of this assertion, without indicating which page supports which "issue." (Doc. 12, pp. 15-16).

Of the 84 pages Plaintiff cites to, the ALJ cites to approximately 49 of them. Of the remaining 35 pages, approximately eight (8) of those pages are medical records from before the relevant period. While the ALJ does not cite to the remaining 27 pages, he often cites to pages close to those Plaintiff lists that discuss the same or similar symptoms. And, in any event, again, "we do not expect the ALJ to make reference to every relevant treatment note in a case where the claimant, such as [Plaintiff], has voluminous medical records, [but] we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."[62] Plaintiff has not made a developed and supported argument that the ALJ did not do so.

Plaintiff then argues that "many of these records and issues referenced above, despite being noted over and over in Claimant's medical records, are not noted by the ALJ in his decision" because "the ALJ focuses on a few records showing only

---

[62] *Fargnoli*, 247 F.3d at 42.

temporary improvement by Claimant, and as such, the resulting RFC from the ALJ is not reflective of Claimant's actual limitations, nor is the RFC from the ALJ reflective of a consideration of the entire record in this matter." (Doc. 12, p. 16). Plaintiff does not, however, cite to which of the "many . . . records and issues referenced above" are not noted by the ALJ in his decision, apparently leaving the Court to search the records. *Id*. That search is simply not the Court's responsibility.[63] Moreover, Plaintiff's conclusory assertion that the ALJ only focuses on few records showing temporary improvement and that the RFC is not reflective of Claimant's actual limitations or a consideration of the entire record in this matter is not persuasive. The ALJ specifically acknowledges records that show both Plaintiff's improvements and her regressions. (Admin. Tr. 18-23). As discussed above, the ALJ thoroughly and comprehensively reviewed and explained the medical evidence of record, citing to the record expansively. It appears that Plaintiff simply disagrees with the ALJ's interpretation of the record and the RFC he crafted, and believes greater limitations should have been included. That disagreement, however, challenges the interpretation of the record rather than challenging whether substantial evidence supports the ALJ's decision.

In sum, Plaintiff's arguments that the ALJ erred and abused his discretion by failing to consider limitations from Plaintiff's severe impairments are not persuasive.

---

[63] *Claxton*, 766 F.3d at 307.

The Court finds that the ALJ's RFC assessment was supported by substantial evidence.

We end by noting that, once distilled, the overarching theme of Plaintiff's arguments in this section is that the ALJ interpreted the record incorrectly, and that the Court should accept her analysis of the record over the ALJ's. However, even if the Court agreed and believed the ALJ did interpret the record incorrectly, it would not matter.[64] We cannot reweigh the evidence.[65] The question before the Court is not whether the Court agrees with the ALJ's interpretation of the evidence or even whether the Court agrees with the ALJ's decision. The question is simply whether the ALJ's decision is supported by substantial evidence. Here, it is.

## V.    CONCLUSION

For these reasons we find that Plaintiff's request that the Court reverse the administrative decision of the ALJ, remand Plaintiff's case for a new hearing, or award benefits will be DENIED. An appropriate order will issue.

Date: November 6, 2024                    BY THE COURT

                                          _s/William I. Arbuckle_
                                          William I. Arbuckle
                                          U.S. Magistrate Judge

---

[64] The Court expressly takes no opinion on the 'correctness' of the ALJ's interpretation of record.

[65] *Chandler*, 667 F.3d at 359.